**Exhibit E**

**Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

In re:

REED AND BARTON CORPORATION,

                Debtor.

Chapter 11

Case No. _____ (____)

**ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF THE BANKRUPTCY CODE,
FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AND
LOCAL RULE 6004-1 (A) AUTHORIZING AND APPROVING ASSET PURCHASE
AGREEMENT BETWEEN REED AND BARTON CORPORATION, AS SELLER, AND
PROPOSED PURCHASER, WHICH PROVIDES FOR THE SALE OF CERTAIN
PERSONAL PROPERTY OF REED AND BARTON CORPORATION FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS;
(B) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN
EXECUTORY CONTRACTS AND (C) GRANTING RELATED RELIEF**

Upon the motion dated February 17, 2015 (the "Sale Motion") of Reed and Barton

Corporation ("Reed and Barton" or the "Debtor"), as debtor and debtor in possession, for entry

of an order, under sections 105, 363 and 365 of title 11, United States Code 11 U.S.C. §§ 101, *et

seq*., (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Massachusetts (the

"Local Rules"), (I) (a) approving sale procedures in connection with sale of (the "Sale") of the

Purchased Assets[1] pursuant to the Asset Purchase Agreement executed by the Debtor and

Lifetime Brands, Inc. ("Lifetime") (as amended from time to time) ("Asset Purchase Agreement"

---

[1]        Unless otherwise defined, capitalized terms used herein have the meanings given to them in the Sale
Motion or the Asset Purchase Agreement.

or "Agreement")[2], (b) approving the Break-Up Fee as detailed in the Agreement, (c) scheduling an auction and hearing to approve the Sale transaction and approving the form and manner of notice thereof, and (d) establishing procedures relating to the assumption and assignment of executory contracts; and ultimately, (II) an order (a) approving the proposed sale of the Purchased Assets free and clear of all liens and encumbrances and (b) authorizing the assumption and assignment of certain executory contacts and unexpired leases to the purchaser ("Assumed Contracts"), to the Proposed Purchaser (as more fully described in the Sale Motion); and this Court having held an initial hearing to consider the Sale Motion on or about _____, 2015, and having entered an order dated _____, 2015, (the "Bid Procedures Order") pursuant to which the Court, among other things, (i) established the date and time for the Auction and Sale Hearing; (ii) approved bidding procedures regarding the proposed Sale (the "Bidding Procedures"), (iii) approved the amount and payment of the Break-Up Fee; (iv) approved the form of, and established procedures regarding, the Notice of Auction and Sale Hearing ("Sale Notice"); and (v) approved the form of, and established procedures regarding, the Cure Notice, and governing the assumption and assignment of Assigned Contracts; a Qualified Overbid having been received from _____ ("___") a Qualified Bidder (as such term is defined in the Bid Procedures); an Auction having been held in accordance with the Bidding Procedures on _____, 2015; _____ having been declared the Prevailing Bidder at the Auction (the "Purchaser"); and a hearing having been held on _____, 2015 in connection with the Sale Motion (the "Sale Hearing"); and adequate and sufficient notice of the Bid Procedures, Sale Motion, the Cure Notice, and all transactions contemplated thereunder and in this Order having been given in the manner directed

---

[2]     A copy of the Asset Purchase Agreement is annexed hereto as **Exhibit "A".**

by the Court in the Bid Procedures Order and it appearing that no other or further notice hereof is required; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the matters raised by the Sale Motion and relief related thereto; and the Court having reviewed and considered (i) the Sale Motion and any objections thereto (the "Objections") and (ii) the arguments of counsel, and the evidence proffered or adduced, at the Sale Hearing; and the Objections having been otherwise resolved or overruled; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest; upon all of the pleadings filed with the Court and the record of the Sale Hearing made by the Debtor before this Court; and after due deliberation and good and sufficient cause appearing therefor:

IT IS HEREBY FOUND AND DETERMINED THAT: [3]

## Jurisdiction, Final Order And Statutory Predicates

A.      The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of the Debtor's chapter 11 case and the Sale Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409(a).

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

C.      The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), (l) and (m) and 365(a), (b), (c), (e), (f) and (k) of the Bankruptcy Code, as

---

[3]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.  Any statements of the Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order.

complemented by Bankruptcy Rules 2002(a)(2), (c)(1), (g) (except as to equity interests), (i), (j) and (k), 6004(a), (b), (c), (e), (f) and (h) and 6006(a), (c) and (d).

## Retention of Jurisdiction

D.       It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order, the Asset Purchase Agreement, and to adjudicate, if necessary, any and all disputes involving the Debtor concerning or relating in any way to, or affecting, the Sale and related documents.

## Corporate Authority; Consents and Approvals

E.       The Debtor has full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby and to consummate the Sale.  The Sale has been duly and validly authorized by all necessary corporate actions of the Debtor and any applicable affiliate, and by this Court.  The Court knows of no consents or approvals other than as expressly set forth in the Asset Purchase Agreement that are required for the Debtor to consummate the Sale.

## Notice of the Sale Motion

F.       As evidenced by the certificates of service previously filed with this Court (the "Notice Certificates") and based on representations of counsel at the Sale Hearing (i) due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, the Auction, and the Sale, including without limitation, the assumption and assignment of the Assumed Contracts, has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and in compliance with the Bid Procedures Order, (ii) such notice was good and sufficient, and appropriate under the circumstances, and (iii) no

other or further notice of the Sale Motion, the Asset Purchase Agreement, the Sale Hearing, or the relief sought with respect thereto shall be required.

G.    A reasonable opportunity to object or be heard with respect to the Asset Purchase Agreement, Sale Motion, Cure Notice, and Sale Hearing has been afforded to all interested persons and entities, including, among others:  (i) all parties entitled to receive notice as of the date hereof pursuant to Bankruptcy Rule 2002(a)(2), (ii) all parties who the Debtor believes have an interest in acquiring the Purchased Assets, (iii) all entities listed on the Debtor's schedules as holding claims secured by, and all entities who recorded or filed proof(s) of claim asserting claims secured by, the Purchased Assets, (iv) all entities who have recorded in the public record any lien, interest or encumbrance in or upon the Purchased Assets, and (v) all parties to the Assumed Contracts.

H.    As demonstrated by the evidence proffered at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, (1) the Debtor has appropriately marketed the Purchased Assets in full compliance with the Bidding Procedures Order (including with respect to the solicitation and evaluation of bids, the conduct of the Auction and the acceptance of the offer set forth in the Agreement) and all such actions are hereby ratified and approved; (2) the Bidding Procedures and the Auction were duly noticed and conducted in a non-collusive, fair and good-faith manner; and (3) a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets and the Assumed Contracts; and (4) the Debtor determined that the Purchaser is the Prevailing Bidder.

## Sound Business Purpose for the Sale

I.    The Debtor has advanced sound and sufficient business reasons, and it is a reasonable exercise of the Debtor's business judgment to sell all right, title and interest in and to

the Purchased Assets on the terms set forth in the Asset Purchase Agreement and to consummate the Sale.

J.       The Debtor has demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the entry into the Asset Purchase Agreement and the consummation of the Sale pursuant to section 363(b) of the Bankruptcy Code prior to confirmation of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value to the Debtor's estate.

<u>**Auction**</u>

K.       On _____, 2015, the Debtor conducted an Auction in accordance with the Bid Procedures Order entered by the Court.  During the final round of bidding, the Purchaser submitted a bid for aggregate consideration of $_____ which[, after netting of the Break-Up Fee,] results in consideration to Debtor and its estate of approximately $_____.

L.       At the conclusion of the Auction, the Debtor determined that Purchaser was the Prevailing Bidder for the Purchased Assets pursuant to the Asset Purchase Agreement.

<u>**Highest and Best Offer**</u>

M.       The Debtor's determination that the Purchaser's Bid under the terms of the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

N.       The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement: (1) is fair and reasonable under the circumstances of the Debtor; (2) is the highest and best offer for the Purchased Assets under the circumstances of the Debtor because, among other things, (a) the Asset Purchase Agreement provides the highest cash consideration to the Debtors' estates as compared to any Overbid (as defined in the Bidding Procedures), (b) it has

been represented that the Purchaser has sufficient cash to consummate the Closing, and (c) the Purchaser is prepared to consummate the transactions contemplated by the Asset Purchase Agreement in compliance with the terms and conditions of that Agreement; (3) will provide a greater recovery to the Debtor's bankruptcy estate than would be provided by liquidation, which in the reasonable business judgment of the Debtor, is the only other available alternative; and (4) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

O.     Based on the record before it, it appears to the Court that no other entity has submitted a qualified bid providing greater economic value for the Purchased Assets than the Purchaser.

## Good Faith of the Purchaser

P.     The Asset Purchase Agreement and the Sale were negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good-faith and from arm's length bargaining positions.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded thereby.  In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions set forth in the Asset Purchase Agreement at any time after the entry of this Order.

Q.     It appears to the Court that neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Sale to be avoided under Section 363(n) of the Bankruptcy Code, and the Asset Purchase Agreement and the Sale are not avoidable.

**Validity of Transfers**

R.      The transfer of the Purchased Assets to the Purchaser is intended to be, and to the full extent permissible by law is, a legal, valid and effective transfer of the Purchased Assets and, except for the Assumed Liabilities, will vest the Purchaser with all right, title and interests of the Debtor in and to the Purchased Assets, free and clear of all Claims, Liens, encumbrances and other interests (collectively, the "Interests"), including, but not limited to (1) those that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtor's or Purchaser's interest in the Purchased Assets, or any similar rights; (2) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the consummation of the Sale (the "Closing"); and (3) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and (b) all debts, claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law.

S.      It is intended that the Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to:  (1) be a successor to the

Debtor (other than with respect to the Assumed Liabilities and any obligations arising under the
Assumed Contracts from and after the Closing); or (2) have, *de facto* or otherwise, merged with
or into the Debtor.

T.      The Purchaser is only purchasing the Purchased Assets, which specifically
excludes the Excluded Assets, and is not purchasing, among other Excluded Assets, avoidance
claims or causes of action arising under Chapter 5 of the Bankruptcy Code or rights, claims and
causes of action not constituting or associated with the Purchased Assets.  Notwithstanding
anything in this Order to the contrary, this Order is without prejudice to the rights of any person
or entity against whom a claim is brought (i) by or on behalf of the debtor, its estate or any
successor (including without limitation any committee, trustee or post-confirmation
representative), or (ii) by the Purchaser, to defend against any such claim on any grounds,
including without limitation setoff and recoupment, lack of standing, any defenses concerning
damages, and that the assertion of the claim represents improper claim splitting.

### Section 363(f) of the Bankruptcy Code is Satisfied

U.      The Debtor may sell the Purchased Assets free and clear of all Interests because,
in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy
Code has been or will be satisfied.  The holders of Interests in or against the Debtor, its estate or
the Purchased Assets, and non-Debtor parties to any related agreements who did not object, or
who withdrew their objections, to the Sale Motion, are deemed to have consented pursuant to
section 363(f)(2) of the Bankruptcy Code.  Holders of Interests who asserted an objection at the
Sale Hearing, if any, fall within one or more of the other subsections of section 363(f) and are
adequately protected by having their Interests, if any, in each instance against the Debtor or its
estate or the Purchased Assets, attach to the cash proceeds to be received by the Debtor under the

Asset Purchase Agreement, subject to the same priority and validity (and defenses and objections

of the Debtor and other parties in interest, if any, with respect thereto) as such Interests presently

have with respect to the Debtor or its estate or the Purchased Assets

V.    It has been represented to the Court that the Purchaser would not have entered

into the Agreement and will not consummate the transactions contemplated thereby, thus

adversely affecting the Debtor, its bankruptcy estate and its creditors and other stakeholders, if

the Sale of the Purchased Assets to the Purchaser, the assumption, assignment and sale of the

Assumed Contracts to Purchaser and the assumption of the Assumed Liabilities by Purchaser

were not, except as otherwise provided in the Agreement with respect to Assumed Liabilities,

free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in

the future could, be liable for any of such Interests including, but not limited to, (1) any

employment or labor agreements; (2) any pension, welfare, compensation or other employee

benefit plans, agreements, practices and programs, including, without limitation, any pension

plan of the Debtor; (3) any other employee, worker's compensation, occupational disease or

unemployment or temporary disability related Claim; (4) any products liability or similar Claims,

whether pursuant to any state or federal laws or otherwise; (5) environmental Claims or Liens

arising from conditions first existing on or prior to the Closing (including, without limitation, the

presence of hazardous, toxic, polluting or contaminating substances or waste) that may be

asserted on any basis, including, without limitation, under the Comprehensive Environmental

Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.*, or similar state statute; (6)

any bulk sales or similar law; (7) any tax statutes or ordinances, including, without limitation, the

Internal Revenue Code of 1986, as amended; and (8) any theories of successor liability.

## **Assumption and Assignment of the Assumed Contracts**

W.      The Debtor has demonstrated that assuming and assigning the Assumed Contracts listed on **Exhibit B** to this Order in connection with the Sale is an exercise of their sound business judgment, and that assumption and assignment of the Assumed Contracts to the Purchaser is in the best interests of the Debtor's estate.

X.      The Debtor has provided compensation or adequate assurance of compensation to any non-Debtor party to such Assumed Contracts for any of their actual pecuniary losses resulting from any default arising prior to the Closing Date under any such Assumed Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(B) through and upon payment by the Purchaser of the amounts set forth in Exhibit B (collectively, the "Cure Amounts").

Y.      As represented by the Debtor, in accordance with the Bidding Procedures Order, the Debtor has served the Cure Notice on each non-Debtor counterparty to an Assumed Contract that the Debtor seeks to assume and assign to the Purchaser on the Closing Date.  The service of such Cure Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Assigned Contracts. Non-Debtor counterparties to the Assigned Contracts have had an opportunity to object to the Cure Amount set forth in the Cure Notice.

Z.      The Purchaser has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

AA.      The Debtor has, to the extent necessary, satisfied the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the Sale, the assumption and

assignment of the Assumed Contracts, and shall upon assignment thereof on the Closing Date, be relieved from any liability under the Assumed Contracts.

## **Waiver Of Stays**

BB.    The Debtor has articulated good and sound business reasons for waiving the stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d), including those set forth above.

## **CONCLUSIONS OF LAW**

NOW THEREFORE, IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    To the extent any conclusion of law set forth below herein constitutes a finding of fact, this Court so finds.

## **General Provisions**

2.    The Sale Motion is granted and approved in all respects with respect to the Sale, subject to the provisions of this Order.

3.    Any objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled, are denied and overruled on the merits with prejudice.

4.    The terms and provisions of this Order shall be binding in all respects upon the Debtor, its estate, creditors, members, managers and shareholders of any of the Debtor, the Purchaser and its officers, directors and members, all interested parties, and their respective successors and assigns, including, but not limited to, all non-Debtor parties asserting any Interests in or against the Debtor, its estate or the Purchased Assets.

**Approval of Asset Purchase Agreement**

5.        The Asset Purchase Agreement (including all of the related documents, exhibits, schedules, lists and agreements) and the transactions contemplated thereby are approved in all respects.

6.        Pursuant to sections 363(b) and (f) of the Bankruptcy Code and the Asset Purchase Agreement, the Debtor is authorized, empowered and directed to (i) take any and all actions necessary or appropriate to effect, consummate and close (a) the assignment, transfer and conveyance of the Purchased Assets to the Purchaser, (b) the Sale, and (c) this Order, and (ii) execute and deliver, perform under, consummate, implement and close fully the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale.

7.        The Purchaser is directed to pay, at and conditioned upon the Closing, the cash portion of  the Purchase Price (less any credit for its Deposit) (the "Funds") to Debtor and otherwise perform its obligations under the Asset Purchase Agreement.

8.        The Purchaser is also directed to deliver, , at and conditioned upon the Closing, the Note portion of the Purchase Price (the "Note").  The Debtor is directed to hold the Note until such time as the final reconciliation of all adjustments to the Note contemplated in the Asset Purchase Agreement, including, but not limited to, the adjustments for Working Capital and for Cure Amounts (collectively, the Adjustments"), are determined or adjudicated, at which time the Debtor is authorized to undertake such modifications, amendments or substitutions to or for the Note as are necessary or appropriate to reflect such determination or adjudication of the Adjustments.

9.      Debtor is further authorized to make payment at Closing on the Asset Purchase Agreement in the amount of $_____ to Rockland Trust Company in the manner so directed by its counsel, from the Funds (the "Rockland Trust Payment"), with the remainder to be held by the Debtor for distribution to administrative, priority, and unsecured creditors in accordance with subsequent orders of this Court.

10.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and on the terms set forth in the Asset Purchase Agreement, upon the Closing provided in the Asset Purchase Agreement, the Purchased Assets shall be and hereby are deemed transferred and assigned to the Purchaser effective as of 11:59 p.m. (Prevailing Eastern Time) on the Closing Date, free and clear of all Interests arising or relating to the period prior to the Closing, other than Assumed Liabilities.

11.     The transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest to the Purchased Assets, free and clear of all Interests except as expressly stated as obligations of the Purchaser under the Asset Purchase Agreement and/or under this Order.

12.     Except as expressly permitted by the Asset Purchase Agreement or otherwise specifically provided by this Order, the Bankruptcy Code, or Bankruptcy Rules, (i) all persons and entities holding interests of any kind and nature accruing, arising or relating to a period prior to the Closing Date with respect to the Purchased Assets hereby are barred, estopped, and permanently enjoined from asserting such Interests against the Purchaser or any of its affiliates, stockholders, members, managers, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys, or the Purchased Assets, and (ii)

the Purchaser shall have no liability or responsibility for any such Interest arising, accruing, or relating to a period prior to the Closing Date, except as otherwise provided for in the Asset Purchase Agreement.

13.　　Each non-Debtor party to any agreements with the Debtor that are not part of the Purchased Assets are hereby barred, estopped, and permanently enjoined from asserting any claims against the Purchaser relating to any such agreements.

14.　　On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets or a bill of sale transferring good and marketable title of the Purchased Assets to the Purchaser.

15.　　If any person or entity that has filed financing statements, or other documents or agreements evidencing Interests in the Debtor or the Purchased Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and execution by the appropriate parties, termination statements, instruments of satisfaction or releases of all Interests in the Debtor or the Purchased Assets or otherwise, then the Purchaser or its assignee is hereby authorized to file, register or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Interests in the Debtor or the Purchased Assets of any kind or nature whatsoever, and shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title companies, government departments, secretaries of state and other persons authorized by law to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or issue any title or state of title in or to the Purchased Assets.

**<u>Assumption and Assignment of Assumed Contracts</u>**

16.     Pursuant to Section 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtor's assumption and assignment to the Purchaser of the Assumed Contracts is hereby approved.

17.     The Debtor is hereby authorized, pursuant to Sections 105 and 365 of the Bankruptcy Code, to (a) assume and assign to the Purchaser, effective upon the Closing, the Assumed Contracts, and/or to transfer, sell and deliver to the Purchaser all of Debtor's right, title and interest in and to the Assumed Contracts, free and clear of all Interests, except as provided in the Asset Purchase Agreement, (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

18.     The requirements of Section 365(b)(1) of the Bankruptcy Code are hereby deemed fully satisfied, subject to payment of the Cure Amount pursuant to the Agreement and this Order, and the Purchaser shall not be required to produce any further evidence of its financial condition or ability to perform under any of the Assumed Contracts or be required to fund a deposit to demonstrate adequate assurance of future performance.

19.     On the Closing Date or as soon thereafter as is practicable, but in any event, within seven days of the Closing Date, the Purchaser is required to make payment, in full, to the extent owed, of all Cure Amounts owing to holders of Assumed Contracts, in respect of all undisputed Cure claims and all Cure Amounts that have been determined by this Court pursuant to a Final Order as of the Closing Date.  The Cure Amounts listed in Exhibit B represent the sole amounts necessary under Section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts and no other amounts are or shall be due to the non-Debtor parties in connection with the assumption by the Debtor and the assignment to the Purchaser of the Assumed Contracts.

20.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser, in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including provisions of the type described in sections 365(b)(2), (e)(1), (f)(1) and (f)(3) of the Bankruptcy Code) which prohibits, restricts or conditions such assignment or transfer.  The non-Debtor party to each Assumed Contract shall be and hereby is deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code or this Court has determined that no such consent is required, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract as of the applicable Closing Date without the necessity of obtaining such non-Debtor party's written consent to the assumption and assignment thereof.  Any provision limiting the assignment of any Assumed Contract shall be null, void and of no force and effect in connection with the assignment to the Purchaser.

21.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtor and its estate shall be relieved from any liability for any breach of an Assumed Contract after such assignment to and assumption by the Purchaser on the Closing Date.

22.     As of the Closing Date, subject only to the payment of the Cure Amounts, as determined in accordance with the procedures identified in the Sale Motion, each Assumed Contract will be in full force and effect and enforceable by Purchaser against any non-Debtor party thereto in accordance with its terms and the Purchaser shall be deemed in compliance with all terms and provisions of the Assumed Contracts.

23.     Upon payment of the Cure Amounts, each non-Debtor party to an Assumed Contract is forever barred, estopped and permanently enjoined from asserting against the Purchaser and the Debtor, and their respective property and affiliates, any breach or default

under any Assumed Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing Date for such Assumed Contract or with regard to the assumption and assignment thereof pursuant to the Asset Purchase Agreement or this Order.

24.     Notwithstanding anything to the contrary in this Order, upon assumption of the Assumed Contracts, the Purchaser is expressly assuming liabilities arising under the Assumed Contracts that first arise and accrue on and after the Closing Date.

**<u>Binding Effect</u>**

25.     The sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Interests and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor.  All persons holding Interests in the Debtor, its estate or the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, its affiliates or the Purchased Assets, with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtor, its estate, or the Purchased Assets.  Following the Closing Date, no holder of an Interest in the Debtor shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interests and all such Interests, if any, shall be and hereby are channeled, transferred and attached solely and exclusively to the proceeds of the Sale.

26.     This Order (a) shall be effective as a determination that, except for the Assumed Liabilities, at Closing, all Interests of any kind existing as to the Purchased Assets before the Closing have been unconditionally released, discharged and terminated as set forth herein, and

that the conveyances described herein have been effected, with any such Interests to attach to the cash proceeds of the Sale in the same amount, validity and priority as existed as of the Petition Date, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

27.     Each and every federal, state, and local governmental agency, unit or department is hereby directed to accept this Order as sole and sufficient evidence of the transfer of title of the Assets and such agency or department may rely upon this Order in connection with the Sale.

28.     All entities that are in possession of some or all of the Purchased Assets upon the Closing are hereby directed to surrender possession of the Purchased Assets to the Purchaser at the Closing.

29.     Except as otherwise expressly provided for in the Agreement or in this Order, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets upon Closing and shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no vicarious or successor liabilities of any kind, whether known or unknown, with respect to the Debtor arising prior to the Closing.   The consideration paid by the Purchaser shall constitute valid and valuable consideration for the releases of potential Claims of successor

liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtor or the Purchased Assets.

30.    Except as otherwise expressly provided in the Agreement and to the fullest extent permitted by law, the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits or any other payment with respect to employees or former employees of the Debtor. Except as otherwise provided for in the Agreement, the Purchaser shall have no liability with respect to employee welfare or retention, benefit and/or incentive plan to which the Debtor is a party and relating to the Purchased Assets, and the Purchaser shall in no way be deemed a party to or assignee of any such agreement, and no employee of the Purchaser shall be deemed in any way covered by or a party to any such agreement, and except for Assumed Liabilities; all parties to any such employee-related plan agreement are hereby enjoined from asserting against the Purchaser any and all Claims arising from or relating to such agreement.  In the event that, as a result of the transaction contemplated hereunder, employees of the Debtor are laid off or their employment with the Debtor otherwise is terminated, the Debtor is authorized to use the Excluded Assets to satisfy claims of such terminated employees for post-petition wages, accrued vacation pay and any other post-petition claim due to such employees upon termination.

31.    After the Closing Date, no person or entity, including without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against the Purchased Assets on account of, or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax or other amount alleged to be owing by the Debtor (i) for any period commencing before and concluding prior to or after the Closing, or (ii) assessed prior to and payable after the Closing Date, except as otherwise specifically provided in the Asset Purchase Agreement.

<u>Miscellaneous Provisions</u>

32.     This Court retains jurisdiction, even after the closing of this case, to:

(i)      interpret, implement and enforce the terms and provisions of this Order and the terms of the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

(ii)     enter orders in aid or furtherance of the Sale;

(iii)    resolve any disputes arising under or related to the Asset Purchase Agreement or the Sale, or to ensure peaceful use and enjoyment of the Assets;

(iv)    adjudicate and disputes relating to Cure Amounts;

(v)     adjudicate any and all issues and/or disputes, if any, relating to the Purchaser's or the Debtor's right, title or interest in, to and under the Asset Purchase Agreement and related agreements;

(vi)    adjudicate all issues concerning proration, reconciliation or adjustment under the Asset Purchase Agreement, including, but not limited to, taxes and the Adjustments, consistent with the terms of the Asset Purchase Agreement;

(vii)   hear and resolve any application (or disputes or issues relating thereto) to the Asset Purchase Agreement;

(viii)  adjudicate any and all issues and/or disputes relating to the Debtor's right, title or interest in the Assets and the proceeds thereof, the Sale Motion and/or the Asset Purchase Agreement; and

(ix)    re-open the Debtor's chapter 11 cases to enforce the provisions of this Order.

33.     Neither the Sale, nor the consideration provided by the Purchaser for the Assets under the Asset Purchase Agreement, may be avoided under section 363(n) of the Bankruptcy Code and each and every person or entity is hereby barred, estopped, and permanently enjoined from commencing or continuing an action seeking relief under section 363(n) of the Bankruptcy Code.

34.     The Debtor and the Purchaser have undertaken the Sale in good faith (as that term is used in section 363(m) of the Bankruptcy Code) and without collusion, and the Purchaser is and shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the Sale.  Accordingly, the reversal or modification on appeal of the authorization to consummate the Sale approved hereby shall not affect the validity and enforceability of such Sale, unless such authorization is duly stayed pending such appeal.  The Purchaser is a good faith purchaser of the Assets and entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

35.     The failure specifically to include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the Asset Purchase Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.

36.     Nothing contained in any plan of reorganization confirmed in these cases or the order of confirmation confirming any such plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

37.     The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, their estates, and their creditors and interest holders, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting a Claim against or Interest in the Assets to be sold to the Purchaser pursuant to the Asset Purchase Agreement, notwithstanding any subsequent appointment of any trustee for the Debtor under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all respects.

38.    The transfer of the Purchased Assets pursuant to the Sale is intended to be exempt from imposition of a stamp or similar tax under Section 1146(a).

39.    Notwithstanding Bankruptcy Rules 7062 and 6004(h) and 6006(d), to the extent applicable, the Court finds that there is no reason for delay in the implementation of this Order and, thus, this Order shall be effective and enforceable immediately upon entry.  The Debtor and the Purchaser may consummate the Asset Purchase Agreement at any time after entry of the Order by waiving any and all closing conditions set forth in the Asset Purchase Agreement that have not been satisfied and by proceeding to close the Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtor and/or any other party in interest.

40.    The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement is not material.

41.    The provisions of this Order are non-severable and mutually dependent.


Dated: Boston, Massachusetts
_____, 2015


_____
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A – FINAL ASSET PURCHASE AGREEMENT

EXHIBIT B – CURE AMOUNTS