IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>REED AND BARTON CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10534 (HJB) |

**SUPPLEMENTAL DECLARATION OF TIMOTHY K. RIDDLE
IN SUPPORT OF DEBTOR'S MOTION FOR (I) AN ORDER (A) APPROVING SALE
PROCEDURES IN CONNECTION WITH SALE OF CERTAIN OF THE DEBTOR'S
ASSETS, (B) APPROVING THE BREAK UP FEE, (C) SCHEDULING AN AUCTION
AND HEARING TO APPROVE THE TRANSACTION AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, AND (D) ESTABLISHING PROCEDURES
RELATING TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS; AND (II) AN ORDER (A) APPROVING THE PROPOSED SALE, (B)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
<u>(C) GRANTING CERTAIN RELATED RELIEF</u>**

I, Timothy K. Riddle, hereby declare under penalty of perjury:

1. I am the President and a Director of Reed and Barton Corporation ("<u>Reed and Barton</u>" or the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned chapter 11 case. I am familiar with the Debtor's day-to-day operations, business, and financial affairs.

2. On February 17, 2015 (the "<u>Petition Date</u>"), the Debtor commenced the above-captioned chapter 11 case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtor continues to operate its business and manage its assets as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's chapter 11 case, and no committees have been appointed or designated.

3. Among the "first day" pleadings filed on the Petition Date, the Debtor filed the *Debtor's Motion For (I) An Order (A) Approving Sale Procedures in Connection with Sale of Certain of the Debtor's Assets, (B) Approving the Break Up Fee, (C) Scheduling an Auction and Hearing to Approve the Transaction and Approving the Form and Manner of Notice Thereof, and (D) Establishing Procedures Relating to the Assumption and Assignment of Executory Contracts; and (II) An Order (A) Approving the Proposed Sale, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* (the "Bid Procedures/Sale Motion") [Docket No. 12].

4. I respectfully submit this declaration (the "Declaration") in support of the Bid Procedures/Sale Motion. Except as otherwise indicated, all facts set forth in this Declaration are based on my own personal knowledge, on knowledge supplied to me by other members of the Debtor's management team and/or professionals retained by the Debtor, on information learned from my review of relevant documents, or on my opinion based upon my experience and knowledge of the Debtor's operations, financial condition, and present liquidity needs. I am duly authorized to submit this Declaration on behalf of the Debtor.

5. As more fully described in the Bid Procedures/Sale Motion, the Debtor has entered into an Asset Purchase Agreement (the "APA") with Lifetime Brands, Inc. ("Lifetime"), pursuant to which Lifetime has agreed to acquire substantially all of the Debtor's assets for a purchase price of $15 million, consisting of $10 million cash consideration and a promissory note in the amount of $5 million. Additionally, Lifetime has agreed to fund the costs of the Debtor maintaining its New York, New York showroom through April 2015 and costs of the Debtor's participation in the New York Tabletop Show (the "Show Costs"). The New York Tabletop Market Show is the unparalleled industry event for major retailers making inventory

selections in the tabletop merchandise category, with over 160 brands represented in 80 showrooms over 21 floors.

6. Lifetime, as would any strategic buyer seriously considering acquiring all or substantially all of the assets of a tableware and flatware designer and distributor such as the Debtor, requires Reed and Barton's participation in the New York Tabletop Show.

7. The estimated cost of participation in the show is roughly $120,000 to $150,000 – an expense that is not provided for in the Debtor's budget. The Debtor has received interim approval to borrow under a DIP credit facility, which provides funding for the costs of maintaining the Debtor's day-to-day business operations. The Show Costs are not included under the DIP financing budget, and projections suggest there is insufficient availability under the credit facility for Reed and Barton to cover the costs. The Debtor is therefore unable to fund the Show Costs on its own and is at risk of suffering a detrimental decrease in the value of its business if it is unable to participate in the New York Tabletop Show. Moreover, Lifetime has suggested that the Debtor's failure to participate in the New York Tabletop Show could be construed by it as a deviation from Reed and Barton's regular course of conduct that might cause Lifetime to assert gives rise to a right to terminate the APA. In short, the Debtor's failure to participate in the New York Tabletop Show risks driving down the value of the Debtor's business and could also threaten the contemplated sale of its assets to Lifetime under the APA.

8. In order to preserve the value of the Debtor's business and avoid any unnecessary decrease in the Debtor's sales to major retailers, Lifetime has agreed to fund the Show Costs. Even if the Show Costs were provided for in the Debtor's DIP financing budget, the Debtor is obligated to be pay interest on funds used under its DIP financing; Lifetime's offer to finance the

3

Show Costs not only prevents unnecessary harm to the value of the Debtor's business, but has the added benefit of not carrying interest.

I declare under the pains and penalty of perjury that this Declaration is true and correct.

/s/ *Timothy K. Riddle*
Timothy K. Riddle
President
Reed and Barton Corporation

Dated: March 16, 2015

4